IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA G. EBERLY, Individually, and as Executrix of the Estate of Bryan L. Eberly, Deceased, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 20-6308 |
| v. | : : | |
| LM GENERAL INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, | : : : : | |
| Defendants. | : : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                 September 21, 2021

In this action, the plaintiff seeks underinsured motorist (UIM) benefits on behalf of her husband, who was killed in a tragic automobile accident in June 2016. At the time of the accident, the decedent was operating a vehicle that was owned by and provided for his regular use by his employer. He was also covered under an insurance policy issued to him and his wife by the defendants, which provided for stacked UIM coverage. In addition, the plaintiff and the decedent's son, who resided with them in their home at the time of the accident, also had an insurance policy issued to him by the defendants, which provided for non-stacked UIM coverage. The plaintiffs sought coverage under both policies, but the defendants denied those claims, citing the "regular use exclusion" contained in both policies.

The plaintiff thereafter brought the instant action seeking to obtain UIM benefits under the two policies. After removing the action to this court, the defendants filed a motion for summary judgment, arguing that the regular use exclusion precluded coverage under both of the policies. The plaintiff filed a cross-motion for summary judgment, asking the court to find that the regular

1

use exclusion violates Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) and public policy. For the reasons discussed below, the court grants the defendants' motion for summary judgment and denies the plaintiffs' cross-motion for partial summary judgment.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiffs, Cynthia G. Eberly, individually, and as executrix of the Estate of Bryan L. Eberly, deceased, commenced this action by filing a praecipe for a writ of summons against the defendants, LM General Insurance Company and Liberty Mutual Insurance Company, in the Lancaster County Court of Common Pleas on August 31, 2020. *See* Notice of Removal, Ex. 1, Praecipe to Issue Writ of Summons, Doc. No. 1-5. On December 2, 2020, the plaintiffs filed a complaint. *See* Notice of Removal, Ex. 2, Doc. No. 1-6.

In the complaint, the plaintiffs allege that the decedent, Bryan L. Eberly, was traveling eastbound on State Route 322 in Lebannon County on June 23, 2016, at approximately 12:43 p.m. Compl. at ¶ 19, Doc. No. 1-6. At the time, he was permissively operating a motor vehicle owned by BJ Baldwin Electric, Inc. *Id.*

Tragically, another vehicle traveling westbound on State Route 322 crossed from the westbound into the eastbound travel lane and struck Mr. Eberly's vehicle head-on at a high rate of speed. *Id.* at ¶ 20. After the collision, Mr. Eberly was trapped inside his vehicle due to the damage the vehicle sustained on impact, but he was responsive and able to answer questions posed to him by first responders. *Id.* at ¶ 21. Medical personnel were able to extricate him from the vehicle and transported him to Penn State Hershey Medical Center. *Id.* at ¶ 22. While at the hospital, Mr. Eberly died from his injuries. *Id.*

At the time of this accident, Mr. Eberly and Mrs. Eberly were insured under an automobile insurance policy issued by the defendants. *Id.* at ¶¶ 25, 26, Ex. B. This policy provided for stacked

UIM coverage in the amount of $250,000 per person, covering two vehicles, thereby resulting in a potential of $500,000 of UIM coverage for Mr. Eberly's claim. *Id.* at ¶ 27. In addition to Mr. and Mrs. Eberly's policy, their son, Adam Eberly, was residing in their home with them at the time of the accident. *Id.* at ¶ 31. Adam Eberly was a named insured on another automobile insurance policy issued by the defendants. *Id.* at ¶ 32. This policy provided for non-stacked UIM coverage in the amount of $250,000 per person. *Id.* at ¶ 33.

The plaintiffs allege that the tortfeasor was underinsured, so Mrs. Eberly submitted UIM claims under both policies with the defendants. *Id.* at ¶¶ 28–29, 34. The defendants, by letter dated September 21, 2016, denied the UIM claims "citing a policy exclusion precluding coverage for bodily injury suffered while occupying a non-owned vehicle made available for regular use that is not insured under the polic[ies]." *Id.* at ¶¶ 30, 35, Exs. C, E.

Based on these allegations, the plaintiffs asserted two causes of action in the complaint. In the first cause of action, the plaintiffs seek a declaratory judgment that (1) Mr. Eberly was entitled to stacked UIM coverage totaling $500,000 under the defendants' policy issued to him and Mrs. Eberly, and (2) Mr. Eberly was entitled to UIM coverage totaling $250,000 under the defendants' policy issued to Adam Eberly. *Id.* at 10. In the second cause of action, the plaintiffs allege that the defendants breached their insurance agreements by failing to pay UIM benefits to the plaintiffs for Mr. Eberly's injuries sustained in the accident. *Id.* at 11–12.

On December 15, 2020, the defendants timely filed a notice of removal with this this court. Doc. No. 1. The parties filed a joint stipulation to withdraw the plaintiffs' demand for attorney's fees on December 22, 2020. Doc. No. 2. On December 31, 2020, the defendants filed their answer and affirmative defenses to the complaint.[1] Doc. No. 5. Among the affirmative defenses, the

---

[1] Although the court is referring to the defendants in the plural form here, the court recognizes that the defendants assert that LM General Insurance Company issued the insurance policies at issue in this case and, as such, Liberty

defendants claim that Mr. Eberly "was using and occupying a non-owned motor vehicle that had been furnished or made available for his regular use, and which was not insured for [UIM] Coverage under [Mrs. Eberly's policy or Adam Eberly's policy]." Defs.' Answer to Pls.' Compl. with Affirmative Defenses at 10, Doc. No. 5.

The court held an initial pretrial conference with counsel for the parties on January 21, 2021, during which counsel indicated that the court should first resolve the coverage issue via cross-motions for summary judgment. On March 8, 2021, at the court's request, the parties filed a stipulation of facts for purposes of them filing cross-motions for summary judgment regarding the legal issue of the enforceability of the "regular use" auto policy exclusion. Doc. No. 9. On April 6, 2021, the defendants filed a motion for summary judgment, and the plaintiffs filed a cross-motion for partial summary judgment. Doc. Nos. 10, 11. The parties filed opposition briefs to the motions for summary judgment on May 6, 2021. Doc. Nos. 12, 13. The court heard oral argument on the motions on May 20, 2021. Doc. No. 15. The motions for summary judgment are ripe for disposition.[2]

## II.    DISCUSSION

### A.    <u>Standard of Review – Motion for Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure, the court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its existence or non-existence might affect the outcome of the case, and a dispute is 'genuine' if 'the

---

Mutual Insurance Company is improperly named as a defendant. *See* Defs.' Answer to Pls.' Compl. with Affirmative Defenses at 1, n.1, Doc. No. 5.

[2] On September 17, 2020, the defendants submitted a notice of supplemental authority in support of their motion for summary judgment. Doc. No. 16. In this notice, they identified the Honorable Joel H. Slomsky's decision in *Campbell v. Northland Insurance Company*, Civ. A. No. 19-3226 (E.D. Pa.), Doc. No. 31.

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Price v. Commonwealth Charter Academy Cyber Sch.*, Civ. A. No. 19-4633, 2021 WL 1405876, at \*4 (E.D. Pa. Apr. 14, 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. The court must view the evidence "in the light most favorable to the non-moving party." *Abran v. City of Philadelphia*, Civ. A. No. 18-cv-1107, 2020 WL 6781938, at \*4 (E.D. Pa. Nov. 17, 2020) (citing *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011)). "However, unsupported assertions, conclusory allegations or mere suspicions are insufficient to overcome a motion for summary judgment." *Id.* (citation and internal quotation marks omitted).

Once the moving party has met its initial burden, the non-moving party must point to evidence in the record that creates a genuine issue of material fact. *See Doe v. DeJoy*, No. 5:19-cv-5885, 2021 WL 777582, at \*4 (E.D. Pa. Mar. 1, 2021) (citing Fed. R. Civ. P. 56(e)). The non-moving party may not rest merely on the pleadings; rather it must "go beyond the pleadings and present specific facts showing that there is a genuine issue for trial and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion." *Perez-Garcia v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 18-3783, 2021 WL 131343, at \*9 (E.D. Pa. Jan. 13, 2021) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

"The same standards and burdens apply on cross-motions for summary judgment." *Allah v. Ricci*, 532 F. App'x 48, 50 (3d Cir. 2013) (per curiam). When confronted with cross-motions for summary judgment, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006) (citations omitted).

### B.     Factual Background Applicable to the Cross-Motions for Summary Judgment

Bryan Eberly was killed in a motor vehicle accident on June 23, 2016. Stipulation of Facts ("Stip.") at ¶ 1, Doc. No. 9. At the time of the accident, he was operating a vehicle in the course and scope of his employment that was owned and provided for his regular use by his employer, BJ Baldwin Electric, Inc. *Id.* at ¶¶ 3–6. Bryan Eberly was insured under a policy issued to him and Cynthia Eberly by the defendant, LM General Insurance Company, which provided for stacked UIM coverage in the amount of $250,000 per person (the "Cynthia Eberly Policy"). *Id.* at ¶¶ 7–8. This policy insured two motor vehicles. *Id.* at ¶ 9.

At the time of the accident, Bryan and Cynthia Eberly's biological son, Adam Eberly, resided in their home and was a named insured under a separate policy issued by LM General Insurance Company that provided for non-stacked UIM coverage of $250,000 (the "Adam Eberly Policy"). *Id.* at ¶¶ 10–12. This policy insured one motor vehicle. *Id.* at ¶ 13.  Neither the Cynthia Eberly Policy nor Adam Eberly Policy insured the vehicle Bryan Eberly was operating at the time of the accident. *Id.* at ¶¶ 14–17.

As executrix of Bryan Eberly's estate, Cynthia Eberly submitted claims for UIM benefits under both the Cynthia Eberly Policy and the Adam Eberly Policy. *Id.* at ¶¶ 18, 19, 21. LM General

Insurance Policy denied both of those UIM claims, citing the regular use exclusion contained in both policies. *Id.* at ¶¶ 20, 22.

### C.   <u>Analysis</u>

The facts in this case are straightforward and undisputed. The parties agree that Bryan Eberly was operating a vehicle owned by his employer in the course and scope of his employment at the time of the collision. *See id.* at ¶¶ 2–4. There is also no dispute that the vehicle was provided to Bryan Eberly by his employer for his regular use. *Id.* at ¶ 5. Likewise, the vehicle was not insured under either the Cynthia Eberly Policy or the Adam Eberly Policy. *See id.* ¶¶ 14, 15. Those insurance policies contained the same provision excluding coverage for bodily injury sustained:

> By an "insured", as defined in this endorsement, while using, "occupying," or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy.

Compl., Ex. B at ECF p. 47, Ex. D at ECF p. 95, Doc. No. 1-6.

Notwithstanding the unambiguous terms of the insurance contract provisions at issue, the plaintiffs argue that the regular use exclusion contained in those policies violate Pennsylvania's MVFRL. *See* Pls.' Br. in Supp. of Mot. for Partial Summ. J. ("Pls.' PSJ Br.") at 1, Doc. No. 11-2. In particular, they contend that the exclusion operates as a waiver of inter-policy stacking in violation of section 1738 of the MVFRL and the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131 (Pa. 2019). *Id.* at 4. They also assert that the exclusion violates section 1731 of the MVFRL, which requires insurers to offer uninsured or underinsured motorist coverage. *Id.* at 13.

The defendants respond that various courts have upheld the regular use exclusion despite the *Gallagher* decision, which they assert does not apply to the facts here. *See* Def. LM Gen. Ins. Co.'s Br. Opposing Pls.' Mot. for Partial Summ. J. ("Defs.' Opp'n Br.") at 5, 7, Doc. No. 12. The

defendants also contend that section 1731 of the MVFRL has no bearing on their arguments concerning the regular use exclusion, and that the plaintiffs have failed to demonstrate that the regular use exclusion violates public policy. *Id.* at 8–9.

For the reasons discussed below, the court finds that the regular use exclusion does not violate the MVFRL, that *Gallagher* does not apply to the instant case, and that the regular use exclusion operates to bar coverage in this case.

1.      **The Regular Use Exclusion Does Not Violate Section 1738 of the MVFRL**

a.      The Pennsylvania Supreme Court's Decision in *Gallagher* is Not Controlling

In *Gallagher*, the plaintiff had two motor vehicle insurance policies issued by GEICO— one that included $50,000 of UIM coverage for his motorcycle, and another that provided $100,000 of UIM coverage for both of his automobiles. 201 A.3d at 132–33. The plaintiff paid for stacked uninsured motorist (UM) and UIM coverage for both policies. *Id.* at 133. When the plaintiff was involved in a motorcycle accident, he filed claims seeking stacked UIM benefits under both of his policies. *Id.* GEICO paid the plaintiff the $50,000 in UIM coverage available under his motorcycle policy but denied his claim for stacked UIM coverage under the policy for his automobiles. *Id.* In denying coverage under the second policy, GEICO cited a household vehicle exclusion that excluded coverage for bodily injury "while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured . . . under this policy." *Id.*

The Pennsylvania Supreme Court held that the household exclusion cited by GEICO was inconsistent with Section 1738 of the MVFRL, which provides that stacked UM/UIM coverage must be the default coverage option available to every insured and must be available on all vehicles and all policies. *See id.* at 137–38 (citing 75 Pa. C.S. § 1738(a)). The Court explained that although an insured may waive stacked coverage, the insured may only do so by signing a waiver form

prescribed by statute and provided by the insurer. *Id.* at 137. In holding that the household exclusion violated section 1738, the Court found that "under the facts of this case," the exclusion "acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form." *Id.* at 138.

The plaintiffs argue that *Gallagher* "stands for the proposition that insurance policy provisions that conflict with the specific requirements of the MVFRL will be declared invalid and unenforceable." Pls.' PSJ Br. at 4–5. *Gallagher*, they claim, "represents a new lens through which the Pennsylvania Supreme Court will now view challenges to the MVFRL and questions pertaining to automobile insurance policy language" and should be applied to this case. *Id.* at 2, 8.

Despite the plaintiffs' portrayal of *Gallagher* as a landscape-altering decision, the Pennsylvania Supreme Court was careful to note that its decision was "narrow" and limited to the facts of the case. *See Gallagher*, 201 A.3d at 138 n.8. The court wrote:

> As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL. Unlike the Dissent, *we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general*, including exclusions relating to racing and other inherently dangerous activities. If, at some later date, the Court is presented with issues regarding the validity of other UM or UIM exclusions, then we will address them at that time. Our focus here is narrow, regardless of the Dissent's lament to the contrary.

*Id.* (emphasis added) (internal citation omitted); *see also Shepherd v. Talotta*, Civ. A. No. 20-1046, 2021 WL 1582400, at *5 (E.D. Pa. Apr. 22, 2021) (pointing out that "[t]he Third Circuit has also noted the narrowness of the Court's holding [in *Gallagher*]" (citing *Dunleavy v. Mid-Century Ins. Co.*, 848 F. App'x 528, 530 nn.2, 3 (3d Cir. 2021))).

The cases cited by the plaintiffs in support of their expansive view of *Gallagher*'s reach do not purport to extend *Gallagher* to regular use exclusions. *See* Pls.' PSJ Br. at 5–6 (citing *Blizman*

*v. Travelers Personal Ins. Co.*, Civ. A. No. 3:19-cv-1539, 2020 WL 7041763, at *7 (M.D. Pa. Dec. 1, 2020); *Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 552 (E.D. Pa. 2019); *Smith v. Nationwide*, 392 F. Supp. 3d 540 (E.D. Pa. 2019); *Rutt v. Donegal Mut. Ins. Co.*, No. CI-19-2544, 2019 WL 4570159 (Lancaster Cnty. Ct. Com. Pl. Sept. 16, 2019); *Rush v. Erie Ins. Exchange*, No. CV-2019-1979, *slip op.* (Northampton Cnty. Ct. Com. Pl. June 26, 2020)); *see also id.* at 12 (acknowledging that "*Gallagher* certainly did not expressly overturn *Williams* [*v. GEICO Government Employees Ins. Co.*, 32 A.3d 1195 (Pa. 2011)")).[3] Indeed, none of those cases involved the regular use exclusion at all. *See Blizman*, 2020 WL 7041763, at *7, 12 (denying insurer's motion to dismiss based on household vehicle exclusion and noting that *Gallagher*'s narrowing language "was written in the context of explaining that the majority's opinion did not endanger other, non-household coverage exclusions" (quoting *Stockdale v. Allstate Fire and Cas. Ins. Co.*, 441 F. Supp. 3d 99, 104 (E.D. Pa. 2020))); *Donovan*, 392 F. Supp. 3d at 547 ("With respect to the enforceability of *the household exclusion*, the broad language of the Supreme Court in *Gallagher* favors a conclusion that *such provisions* are *per se* unenforceable." (emphases added)); *Smith*, 392 F. Supp. 3d at 541–42, 545 (denying insurer's motion to dismiss based on household vehicle exclusion and applying *Gallagher*, notwithstanding fact that two insurance policies at issue were issued by different insurers and plaintiff's parents purchased one of them); *Rutt*, 2019 WL 4570159, at *2 (applying *Gallagher* retroactively in action where defendant insurer denied coverage under household vehicle exclusion).

Further underscoring *Gallagher*'s narrow holding, several courts in this circuit have upheld the regular use exclusion notwithstanding *Gallagher*. *See, e.g.*, *Nationwide Affinity Ins. Co. of Am.*

---

[3] As explained *infra*, in *Williams*, the Pennsylvania Supreme Court determined that (1) public policy did not preclude the use of the regular use exclusion, and (2) the regular use exclusion did not violate the MVFRL. 32 A.3d at 1206, 1207, 1209.

*v. Fong*, Civ. A. No. 19-2119, 2020 WL 2039720, at *4 (E.D. Pa. Apr. 28, 2020) (stating that any argument that the regular use exclusion violates public policy would be untenable in light of Pennsylvania Supreme Court's decision in *Williams*); *Mid-Century Ins. Co., LLC v. French*, 412 F. Supp. 3d 511, 516–17 (E.D. Pa. 2019) (concluding regular use exclusion in policy applied and barred coverage); *Barnhart v. Travelers Home and Marine Ins. Co.*, 417 F. Supp. 3d 653, 658 (W.D. Pa. 2019) (stating that "*Gallagher*'s holding does not extend to invalidate the 'regular use exclusion' or to overturn *Williams* as the controlling precedent for this case"). Recently, the Honorable Chad F. Kenney reaffirmed in a published decision that "[t]he Pennsylvania Supreme Court did not overrule or abrogate" *Williams* or *Burstein v. Prudential Prop. & Cas. Inc.*, 809 A.2d 204 (Pa. 2002), the line of cases upholding the regular use exclusion, "in *Gallagher*; the Court was instead careful to limit its holding." *Shepherd*, 2021 WL 1582400, at *5. Judge Kenney declined to hold that the regular use exclusion violated the MVFRL under *Gallagher*, finding that to do so would violate the Pennsylvania Statutory Construction Act's requirement that courts adhere to prior decisions—*Williams* and *Burstein*—interpreting specific statutory language. *Id.* at *5.

The plaintiffs' attempts to distinguish or discredit the aforementioned cases are unavailing. The plaintiffs first argue that *Fong* failed to confront the legal issues presented in *Gallagher* and that it is factually distinguishable from both *Gallagher* and the present case. *See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n Br.") at 3–4, Doc. No. 13. As an initial matter, the court rejects the plaintiffs' premise that *Gallagher* is somehow controlling in a case where the only coverage provision at issue was the regular use exclusion. *See Fong*, 2020 WL 2039720, at *3 n.3 (stating that "because the Court has determined that the Regular Use Exclusion excludes coverage of Jessica Fong's claim, the Court need not consider whether the Household Exclusion applies"). Indeed, the Pennsylvania Supreme Court was careful in *Gallagher* to note the limited reach of the

holding in the case, stating that "we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous activities." 201 A.3d at 138 n.8; *see also Shepherd*, 2021 WL 1582400, at *5 (recognizing that "[t]he Third Circuit has also noted the narrowness of the Court's holding" in *Gallagher* (citing *Dunleavy*, 848 F. App'x 530 nn. 2, 3)). Together with the insureds' abandonment of their argument that *Gallagher* applied, and it is thus unsurprising that, as the plaintiffs note, the *Fong* court "only referenced *Gallagher* in a footnote." MSJ Opp'n Br. at 3.

The plaintiffs also contend that *Fong* is distinguishable because the plaintiff in *Fong* was driving a motor vehicle that she owned, and which was insured under a policy issued to her and her husband. *Id.* While the plaintiffs are correct on this point, the *Fong* court also observed that, like here, the vehicle "was available for [the plaintiff's] regular use." *Fong*, 2020 WL 2039720, at *2. Ultimately, however, the distinction identified by the plaintiffs here is immaterial, as the regular use exclusion at issue in *Fong* excluded coverage for "[b]odily injury suffered while occupying a motor vehicle . . . *owned by . . . or available for regular use of*[] *you or a relative*, but is not insured for Auto Liability coverage under this policy." *Id.* at *4 (bolding removed) (emphasis added).

The plaintiffs also argue that *Shepherd* is distinguishable from the facts of this case because in *Shepherd*, the plaintiff did not purchase stacked UIM coverage. Pls.' Opp'n Br. at 4–5. Although the plaintiffs are correct regarding the non-purchase of stacked UIM coverage in *Shepherd*, the plaintiffs' argument is wide of the mark. *Shepherd* stands for the proposition that *Gallagher* did not overrule *Williams* or *Burstein* and thereby render the regular use exclusion unenforceable, and that the regular use exclusion does not violate public policy. 2021 WL 1582400, at *5–6.

Even though *Shepherd* did not involve stacking, its reasoning is equally applicable to this case. There, the court observed that the household vehicle exclusion in *Gallagher* would always prevent the husband plaintiff from accessing the coverage he had purchased by acting as a *de facto* waiver of stacked coverage. *Id.* at *5; *see also Barnhart*, 417 F. Supp. 3d at 657 (observing that "the *Gallagher* claimant could *never* recover stacked benefits, for which he had paid premiums because he would always be barred by the household exclusion"). Nonetheless, the plaintiffs could still access the UM/UIM coverage they had paid for "on their own cars and on any cars they drive that do not fit within any of the applicable exclusions to such coverage." *Shepherd*, 2021 WL 1582400, at *5. Like in *Shepherd*, the plaintiffs here can access the coverage they paid for— stacked UIM coverage—on any vehicle they own or drive that does not fall into the regular use exclusion: here, the two vehicles insured by the Cynthia Eberly Policy, and the one vehicle insured by the Adam Eberly Policy. *See* Stip. at ¶¶ 9, 13.

The plaintiffs also attack *Mid-Century* on the grounds that it does not discuss *Gallagher*, it did not involve a claim for UM/UIM benefits, and because its discussion of the regular use exclusion was dicta. *See* Pls.' Opp'n Br. at 5. Specifically, the plaintiffs contend that the discussion of the regular use exclusion in *Mid-Century* was "tangential" because the driver, Gavin French, was excluded from his parents' automobile coverage under a "named driver exclusion" and did not reside with his parents at the time of the accident. *Id.*

The court is not persuaded by the plaintiffs' arguments. First, and as discussed above, *Gallagher* dealt with the enforceability of the household vehicle exclusion, which was not at issue in *Mid-Century* or in this case. *See Gallagher*, 201 A.3d at 603. Moreover, far from being "tangential," the *Mid-Century* court's discussion of the regular use exclusion was integral to its holding. Indeed, in addition to finding that the named driver exclusion applied to exclude coverage

13

for the driver, 412 F. Supp. 3d at 514, the court also held that "the Regular Use Exclusion applies and bars coverage." *Id.* at 517.

b.    The Northampton Court of Common Pleas' Decision in *Nationwide Property and Casualty Insurance Co. v. Stuber* Provides Further Support for the Position that the Regular Use Exclusion is Valid and Enforceable

In addition to the federal court decisions discussed above, the regular use exclusion has also been upheld by a Pennsylvania state trial court in *Nationwide Property and Casualty Insurance Co. v. Stuber*, C-48-CV-2019-4957 (Northampton Cnty. Ct. Com. Pl. May 21, 2020).[4] In that case, the plaintiffs argued in part that the regular use exclusion violated the MVFRL and was against public policy. *See Stuber*, slip op. at 13. After surveying Pennsylvania state and federal court decisions upholding the regular use exclusion, including those mentioned above, the court rejected the plaintiffs' arguments, finding the reasoning in *Williams* and *Burstein* applicable because "allowing coverage in this case would require Nationwide to compensate for risks it had not agreed to insure and for which no premiums were collected." *Id.* at 20. The court also found *Gallagher* inapplicable to that case, in part because it concerned the household vehicle exclusion, which the plaintiffs were not asking the court to enforce. *Id.* Although not controlling on the court's decision here, the *Stuber* decision is further evidence of the continued vitality of the regular use exclusion in the Commonwealth.

The plaintiffs here argue that *Stuber* is "both inapplicable and unpersuasive" because the court did not reach the insured's argument that the court should extend *Gallagher* to hold the regular use exclusion unenforceable and because *Stuber* did not involve stacking. Pls.' Opp'n Br. at 6–7. As explained above, and as the state trial court found in *Stuber*, this court rejects the premise that *Gallagher* is applicable to a case that does not involve the household vehicle exclusion. *See*

---

[4] This decision is attached as exhibit 4 to the defendants' motion for summary judgment. *See* Doc. No. 10-3 at ECF pp. 110–31.

*Stuber* at 20 ("We find *Gallagher* inapplicable to the instant matter for several reasons. First, *Gallagher* related to the household exclusion, which exclusion Nationwide is not asking us to enforce in its instant Motion for Summary Judgment."). Moreover, although it did not involve stacking, *Stuber*'s reasoning is equally applicable to this case. In *Stuber*, the court held that the regular use exclusion applied to deny coverage to the claimant, who had chosen not to insure with any insurance whatsoever, because to do so would require the insurance company to provide coverage for which it was not properly compensated. *Id.* Here, the plaintiffs essentially seek to stack coverage onto a non-owned vehicle that was not insured by her or her son's insurance provider and for which they paid no additional premiums. As the court found in *Stuber*, holding the regular use exclusion unenforceable in this case would require the insurance company "to compensate for risks it had not agreed to insure and for which no premiums were collected." *Id.* The same reasons that compelled the *Stuber* court to find the regular use exclusion enforceable compel the court's decision here.

Notwithstanding *Stuber*, the plaintiffs urge the court instead to adopt the reasoning in *Rush v. Erie Insurance Exchange*, C-48-CV-2019-1979 (Northampton Cnty. Ct. Com. Pl. June 29, 2020), a decision from another Judge on the Northampton County Court of Common Pleas who applied *Gallagher* to find the regular use exclusion unenforceable. *See* Pls.' Opp'n Br. at 6–8; *see also* Pls.' PSJ Br., Ex. B ("*Rush*"). They contend that *Rush* and *Gallagher* are more factually similar to this case because "the Plaintiff here preserved her stacking rights and was fully insured," while the driver in *Stuber* "had no coverage whatsoever on the vehicle he was operating at the time of the loss and had waived his stacking rights on his personal auto policy." Pls.' Opp'n Br. at 8.

The court finds the reasoning in *Rush* unpersuasive. In relying on *Gallagher* to hold the regular use exclusion unlawful, the Honorable Stephen G. Baratta noted a "stunning[] similarity"

between *Gallagher* and the case at bar because "the insureds were injured operating vehicles not covered under the policies that the insureds seek to access for UIM coverage they had paid for, and the insurers are using exclusions to deny coverage." *Rush* at 10. The court continued: "If the exclusion, as written, is unenforceable as a matter of law, then it does not matter how one tries to distinguish or explain away the facts." *Id* at 11.

> Echoing Judge Baratta, the plaintiffs argue that
>
> [t]his matter is factually similar to *Gallagher* in that the Plaintiffs here and in *Gallagher* both purchased and paid premiums for stacked UM/UIM coverage with their respective carriers; were injured operating vehicles not covered under the insurance policy they seek to access for a second layer of UIM benefits; and the carriers denied the claims citing a policy exclusion as opposed to an executed waiver of benefits under the MVFRL.

Pls.' PSJ Br. at 8. While the court acknowledges these similarities, both the plaintiffs and the *Rush* court slide over several critical distinctions that set *Gallagher* apart from this case.

As an initial matter, *Gallagher* concerned the validity of the household vehicle exclusion whereas here, the defendants are seeking to deny coverage based on the regular use exclusion. *See Gallagher*, 201 A.3d at 132. Additionally, the plaintiff in *Gallagher* sought coverage for an accident that occurred while he was operating a motorcycle that he owned, and which was insured under a policy issued to him by the defendant. *See id.* at 132–33. Here, Bryan Eberly was operating a vehicle he did not own, and which was not insured under any policy issued by the defendant to him, his son, or the plaintiffs. Furthermore, in *Gallagher*, the plaintiff sought to stack between the two policies issued to him by the same insurer—one that insured his motorcycle, and one that insured his two automobiles. *Id.* at 133. Here, on the other hand, the plaintiffs seek essentially to stack between the Cynthia Eberly and Adam Eberly Policies issued by LM General Insurance Company on the one hand, and the policy insuring the vehicle owned by BJ Baldwin Electric, Inc. on the other.

It is true that, like the policies at issue in *Gallagher*, the Cynthia Eberly Policy provides for stacked UIM coverage.[5] *See* Stip. at ¶ 8; 201 A.3d at 133. In *Gallagher*, the Court found the household vehicle exclusion unenforceable because it operated as a *de facto* waiver of stacked UIM coverage that the plaintiff had purchased. *See* 201 A.3d at 138. However, as the court noted in *Barnhart*, the issue in *Gallagher* was that the "claimant could *never* recover stacked benefits, for which he had paid premiums because he would always be barred by the household exclusion." 417 F. Supp. 3d at 657; 201 A.3d at 138. That is simply not the case here.

Here, the plaintiffs *can* access the stacked coverage she paid for "on [her] own cars and on any cars [she] drive[s] that do not fit within any of the applicable exclusions to such coverage." *Shepherd*, 2021 WL 1582400, at *5. They are not prevented, like the plaintiff in *Gallagher*, under all circumstances from accessing the stacked coverage for which they paid premiums. They are only barred from accessing the stacked coverage in limited circumstances, such as the one presented here, where, for example, they seek to stack onto the policy of a vehicle they do not own, and which is clearly encompassed by the terms of the regular use exclusion. Thus understood, the regular use exclusion "is neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage." *Williams*, 32 A.3d at 1208. Rather, it "functions as a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle." *Id.* The regular use exclusion is thus not a violation of section 1738 of the MVFRL.[6]

---

[5] As indicated *supra*, the Adam Eberly Policy does not provide for stacking. *See* Stip. at ¶ 12.

[6] The court is aware of the Pennsylvania Supreme Court's recent decision in *Donovan v. State Farm Mutual Automobile Insurance Co.*, No. 17 EAP 2020, 2021 WL 3628706 (Pa. Aug. 17, 2021). In *Donovan*, the Court addressed three questions of law certified by the Third Circuit regarding application of the MVFRL. 2021 WL 3628706, at *1. One of those questions was "whether the policy's household vehicle exclusion is enforceable following this Court's recent decision in *Gallagher v. GEICO Indemnity Company*, 650 Pa. 600, 201 A.3d 131 (2019)." *Id.* With regard to this question, the Court concluded that "as in *Gallagher*, the household vehicle exclusion cannot be enforced to waive inter-policy stacking in regard to Linda's Auto Policy as it does not comply with the requirements for waiver of stacking under Section 1738(d)." *Id.* at *13.

Lest there be any doubt that the validity of the regular use exclusion has been a not-infrequent subject of litigation in the Pennsylvania courts, the Court of Common Pleas of Schuylkill County, in *Conti v. Castillo-Rodriquez*, No. S-269-19 (Sept. 25, 2020), a decision issued after *Stuber* and *Rush*, granted the insurer's motion for summary judgment and enforced the regular use exclusion at issue.[7] After explaining the facts in *Gallagher*, the court noted the narrowness of the court's holding and wrote that because "the [Pennsylvania] Supreme Court has not abrogated the reasoning set forth in *Williams*, *supra.*, which is found controlling to the disposition of the case, it is not within the province of this court to determine otherwise." *Conti*, slip op. at 9. The plaintiffs' only response to this case is that she "respectfully disagrees" that the court was powerless to render a decision contrary to *Williams*. Pls.' Opp'n Br. at 8. As discussed above, however, the court agrees that *Williams* and *Burstein*, the two Pennsylvania Supreme Court decisions upholding the regular use exclusion, have not been overruled, and finds *Conti* to be consistent with those decisions and the defendants' attempt to enforce the regular use exclusion here.[8]

c.      The Regular Use Exclusion Does Not Violate Section 1731 of the MVFRL

The plaintiffs also contend that the regular use exclusion violates the mandatory offering provision in section 1731 of the MVFRL and that it operates as "a non-owned vehicle carveout to the scope of the UM/UIM coverage provided by the LM General policies in this case." Pls.' PSJ Br. at 15. The court disagrees. Section 1731 of the MVFRL merely requires insurers to offer UM

---

This court finds that *Donovan* does not alter the conclusion that the regular use exclusion does not violate the MVFRL for the reasons articulated above.

[7] This decision is attached as exhibit 5 to the defendants' motion for summary judgment. *See* Doc. No. 10-3 at ECF pp. 133–43.

[8] As indicated above, the defendants submitted a notice of supplemental authority on September 17, 2021, which identified Judge Slomsky's decision in *Campbell v. The Travelers Home and Marine Ins. Co.*, Civ. A. No. 19-3226 (E.D. Pa. Sept. 3, 2021). Although the court will not address this decision in detail, the court notes that Judge Slomsky determined that the defendant insurance company's regular use exclusion was enforceable under Pennsylvania law. *See* Doc. No. 16-1 at ECF pp. 5–9.

and UIM coverage, and the defendants offered such coverage. *See* Stip. at ¶¶ 8, 12. Purchase of such coverage can be waived. *See* 75 Pa. C.S. § 1731(a), (b).

Moreover, the plaintiffs' reliance on Judge Cheryl Ann Krause's concurring opinion in *Slupski v. Nationwide Mutual Insurance Company*, 801 F. App'x 850 (3d Cir. 2020), in support of this argument is misplaced. In that concurring opinion, Judge Krause wrote that language in the subject policy that denied coverage based on the ownership of the vehicle acted as a *de facto* waiver of UIM coverage without complying with section 1731's waiver requirements. *Slupski*, 801 F. App'x at 856. But *Slupski* is distinguishable on several grounds. First, as the plaintiff herself admits, *Slupski* did not involve a regular use exclusion—or even a household vehicle exclusion, for that matter. *See* Pls.' PSJ Br. at 13. Second, Judge Krause noted in her concurrence that the non-owned vehicle carveout in *Slupski* "was not listed among the policy's exclusions." *Id.* at 859 n.2. Here, by contrast, the regular use exclusion *was* listed as an exclusion in both the Cynthia Eberly and the Adam Eberly policy. *See* PSJ Opp'n Br. at 4.

Finally, Judge Krause cautioned that "we do not call into question policy exclusions that apply to UIM but not liability coverage, for that would conflict with cases like *Burstein*, whose approach the Supreme Court of Pennsylvania recently affirmed in *Williams v. GEICO Government Employees Insurance Co.*" *Slupski*, 801 F. App'x at 859 n.2 (citation omitted). She continued: "Rather, implicit in our approach is that the carveout here cannot be classified as a coverage exclusion—or at least that Nationwide has waived an argument to that effect." *Id.* The parties here do not dispute that the regular use exclusion is exactly that—a coverage exclusion. Additionally, by the exclusion's very terms, it applies only to UIM benefits. *See* Defs.' Mem. at 4 (reciting regular use exclusion language stating that "[w]e do not provide Underinsured Motorists Coverage for 'bodily injury' sustained . . . . ").

### 2.    The Regular Use Exclusion Does Not Violate Public Policy

The court's holding that the regular use exclusion bars coverage in this case is consistent with the policy rationale underpinning the MVFRL. In this regard, it is important to note that *Gallagher*, the principal authority upon which the plaintiffs rely, rested in significant part on the insurer's awareness of the possibility that the claimant would stack between his car policy and his motorcycle policy. *See* 201 A.3d at 138. Because, the Court observed, the insurer had sold both the car policy and the motorcycle policy to the claimant and collected premiums for stacked coverage from him, it was aware of the risk of insuring a motorcycle in the same household as other family vehicles and could simply have quoted and collected a higher premium. *Id.* "There simply is no reason," the Court stated, "that insurers cannot comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver and still be fairly compensated for coverages offered and purchased." *Id.*

Here, of course, the defendants had no way of knowing that the plaintiffs would seek to stack between the policy insuring the vehicle Bryan Eberly was operating at the time of the accident and the insurance policies issued by LM General Insurance Company. As noted previously, the vehicle Bryan Eberly was operating was owned and provided for his regular use by his employer, BJ Baldwin Electric, Inc. Stip. at ¶¶ 3–6. Neither the Cynthia Eberly Policy nor the Adam Eberly Policy provided coverage for that vehicle. *Id.* at ¶¶ 14–17. Moreover, neither the plaintiffs nor Adam Eberly paid additional premiums to stack coverage with the employer's policy. Clearly, there would have been no means for LM General Insurance Company to adjust its coverage premiums to account for the added risk of insuring a non-owned vehicle it did not know even existed. *See Barnhart*, 417 F. Supp. 3d at 657–58 ("[U]nlike *Gallagher*, Barnhart's motorcycle was insured by a different carrier from Barnhart's automobile insurer, Travelers.

Travelers had no notice that its insured, Barnhart, would be operating or occupying a motorcycle. Had it known, Travelers could have adjusted its UIM coverage premiums to account for the additional risk to insure for UIM coverage for the motorcycle that Barnhart regularly used. Thus, the Pennsylvania Supreme Court's analysis in *Williams*, regarding the enforceability of the 'regular use exclusion,' controls in this case.").

To hold that the plaintiffs could engage in inter-policy coverage in the manner they propose here would run counter to the purposes of the MVFRL, which was motivated by "the public policy concern for the increasing costs of automobile insurance." *Burstein*, 809 A.2d at 208; *see also Williams*, 32 A.3d at 1206 (stating that "the overall policies of the MVFRL" include "cost containment and the correlation between the scope of coverage and the reasonable premiums collected." (citation omitted)). Prohibiting enforcement of the regular use exclusion on these facts would "compel[] [an insurer] to underwrite unknown risks that it has not been compensated to insure." *Burstein*, 809 A.2d at 208. The logical result would be that "the cost for UIM coverage would necessarily increase, and employers would have an incentive to underinsure their motor vehicles with the knowledge that injured employees could collect UIM benefits under their personal policies." *Williams*, 32 A.3d at 1208.

The court is not aware of any Pennsylvania Supreme Court decision or other decision in this circuit that has found that the MVFRL is motivated primarily by remedial concerns and consequently held the regular use exclusion to be unenforceable on that basis. Although the plaintiffs cite to several concurrences in *Williams* for the proposition that cost containment is no longer an overriding goal of the MVFRL, *see* Pls.' PSJ Br. at 2–4, the court declines their invitation to

> adopt the more expansive view of *Gallagher*, *Sayles*[ *v. Allstate Ins. Co.*, 219 A.3d 1110 (Pa. 2019)], and [*Prudential Property and Cas. Ins. Co. v.* ]*Colbert*[, 813 A.2d

> 747 (Pa. 2002)] that the focus of the inquiry is no longer grounded in cost considerations, but on compliance with the MVFRL to protect the remedial objectives of the statute and the coverage rights of insureds.

*Id.* at 12; *see Smith*, 392 F. Supp. 3d at 544–45 (declining the plaintiff's "invitation to conclude that the [Pennsylvania] Supreme Court has reversed course on its long-standing conclusion that cost containment is the underlying policy rationale of the MVFRL"). Even the plaintiffs appear to concede that the MVFRL is motivated primarily by cost concerns. *See* Pls.' PSJ Br. at 15 (stating that regular use exclusion is "arbitrary and does not advance the cost containment objectives of the MVFRL"). Finally, *Gallagher* itself, despite the sweeping interpretation the plaintiffs impose on it, did not articulate a new understanding of the MVFRL's underlying purposes. As the court noted in *Smith*, "[b]ecause the Court found that the language of the household vehicle exception clearly violated Subsection 1738(a) of the MVFRL, it invalidated the provision without evaluating the policy underlying the MVFRL." 392 F. Supp. 3d at 545 (citing *Gallagher*, 201 A.3d at 138).

The court has thoroughly considered the plaintiffs' argument that the regular use exclusion violates public policy and finds that they have failed to carry the "heavy burden required to declare an unambiguous provision of an insurance contract void as against public policy." *Williams v. Allstate Ins. Co.*, 595 F. Supp. 2d 532, 542 (E.D. Pa. 2009) (quoting *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190 (Pa. 2008)). As the court has just discussed, the regular use exclusion furthers the MVFRL's cost-containment objectives because it prevents insurance carriers from underwriting unknown risks for which they are not properly compensated. The plaintiffs do not suggest why the regular use exclusion does not advance this objective, nor do they explain why the exclusion is "arbitrary." *See* Pls.' PSJ Br. at 15. "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community

in so declaring [that the contract provision is against public policy]." *Id.* (quoting *Heller v. Pa. League of Cities & Municipalities*, 32 A.3d 1213, 1220–21 (Pa. 2011)). The plaintiffs have not made that showing here, and the court therefore declines to find the regular use exclusion void as against public policy.

### III.    CONCLUSION

For the reasons set forth above, despite the undeniably tragic nature of this case, the court finds that the regular use exclusions in the Cynthia Eberly Policy and Adam Eberly Policy are not void and unenforceable as asserted by the plaintiffs. Thus, they apply to bar the UIM coverage sought by the plaintiffs in this case. Accordingly, the court will grant the defendants' motion for summary judgment and deny the plaintiffs' cross-motion for summary judgment.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

23